UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-22938-BLOOM/Torres

LYNNE CALOGGERO,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's Motion for Summary Judgment, ECF No. [35], filed on July 17, 2024. Plaintiff Lynne Caloggero filed a Response, ECF No. [55], to which Defendant filed a Reply, ECF No. [68]. As authorized by this Court, ECF No. [75], Plaintiff filed a Supplement to her Response, ECF No. [80], to which Defendant filed a Response, ECF No. [81]. The Court has reviewed the Motion, all opposing and supporting submissions,[1] the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted in part and denied in part.

---

[1] Defendant filed a Statement of Material Facts ("SMF") in support of its Motion for Summary Judgment, ECF No. [36]. Plaintiff filed a Response to Defendant's Statement of Material Facts jointly with an Opposing Statement of Material Facts, ECF No. [57]. Defendant filed a Reply to Plaintiff's Response Statement of Material Facts jointly with a Response to Plaintiff's Statement of Material Facts, ECF No. [69].

I. BACKGROUND

A.   Material Facts

In her Complaint, Plaintiff asserts two Counts of Negligence against Defendant: (1) Falling Hazard Caused by Overcrowding of Concert Room (Count 1); and (2) Negligent Failure to Warn of Floor's Change in Elevation (Count 2). ECF No. [1].

The following facts are not genuinely in dispute unless otherwise noted: Plaintiff was a fare-paying passenger who boarded the *Carnival Celebration* in Miami, Florida on December 4, 2022 for a vacation cruise. ECF Nos. [36] ¶ 1, [57] ¶ 1. The *Carnival Celebration* contains a Center Stage area on Deck 6 where shows are presented to passengers. ECF Nos. [36] ¶ 2, [57] ¶ 2. The Center Stage contains tables and chairs for passengers to sit. ECF Nos. [36] ¶ 2, [57] ¶ 2.

On the evening of December 8, 2022, Plaintiff attended a show at the Punchliner Comedy Club on Deck 6. ECF Nos. [36] ¶ 3, [57] ¶ 3. Upon exiting the Punchliner Comedy Club, Plaintiff heard Christmas music playing and walked towards the Center Stage. ECF Nos. [36] ¶ 4, [57] ¶ 4. Plaintiff walked up a ramp behind her husband, Chris Caloggero, to reach the Center Stage. ECF Nos. [36] ¶ 5, [57] ¶ 5. Plaintiff walked through the Center Stage but did not observe any seats available to sit down. ECF Nos. [36] ¶ 6, [57] ¶ 6. Other passengers were sitting in seats or at tables throughout the main Center Stage. ECF Nos. [36] ¶ 7, [57] ¶ 7. Plaintiff did not bump into anyone, nor did anyone bump into her as she was walking through the Center Stage. ECF Nos. [36] ¶ 8, [57] ¶ 8. One exit available to passengers to leave the Center Stage contains a stair with railings. ECF Nos. [36] ¶ 9, [57] ¶ 9. As Plaintiff exited the Center Stage, she did not see the stair and fell. ECF Nos. [36] ¶ 10, [57] ¶ 10. Nobody was blocking Plaintiff's path to exit the Center

Stage. ECF Nos. [36] ¶ 11, [57] ¶ 11. Plaintiff admitted that if she was looking at her feet, she probably would have seen the stair. ECF Nos. [36] ¶ 14, [57] ¶ 14.

Plaintiff and her husband had been in the room less than a minute when Plaintiff fell. ECF Nos. [57] ¶ 20, [69] ¶ 20. The Christmas concert is a very popular show, and Plaintiff testified the concert room was "packed." ECF Nos. [57] ¶ 21, [69] ¶ 21. Plaintiff testified there was only a "very small three foot or so" gap in the crowd. ECF Nos. [57] ¶ 24, [69] ¶ 24. Plaintiff testified that "if you're not anticipating a stair and you don't see a railing, that stair is invisible." ECF Nos. [57] ¶ 25, [69] ¶ 25.

Plaintiff testified to the following in her deposition:

Q. Did you watch your husband as he descended?
A. No. I wasn't looking at him.
Q. How far ahead of your husband -- strike that. How far ahead of you was your husband walking as you were exiting?
A.· I don't know. Fifteen feet, give or take. I couldn't really say. He's not as into the music as I am. And I was -- I really wanted to stay. And so I was kind of hesitant behind him.
Q. Were you -- as you were exiting the Center Stage area, were you looking straight ahead as you were exiting?
A. I remember looking slightly left. That's all I can remember. I think probably because there were people to my right. And, you know, I'm looking at what -- the space that was available to me.
Q. Was there anyone standing in between the far left railing and the center railing that was ·blocking your path?
A. Nobody was blocking the path. People were blocking the railings. I wish they were blocking the path. I probably would've seen the step because I would have had to stop and say excuse me
Q. Were you looking at the ground as you were exiting the Center Stage area?
A. No.
Q. Were you looking at your feet as you were exiting the Center Stage area?
A. No. I don't think so. I mean, if I were looking at my feet, I probably would've seen it. I was probably looking up.

ECF No. [36-1] at 44-45.

The following facts are in dispute:

3

- Plaintiff testified that more than three Carnival employees were present in the concert hall when Plaintiff fell, and they were standing in positions from which they couldn't help but see that the hall was overcrowded. ECF No. [57] ¶ 18. Defendant responds that, if Plaintiff's testimony is taken as true, it at most establishes that Plaintiff "saw several Carnival employees" as she entered the concert hall, not that the venue was "overcrowded," nor that Carnival had notice of any dangerous condition. ECF No. [69] ¶ 18.

- Defendant states that, in the four years prior to the incident, no other person fell on this same stair that Plaintiff fell on. ECF No. [36] ¶ 16. Plaintiff states Defendant doesn't know whether anyone fell on this same stair. ECF No. [57] ¶ 16. Plaintiff adds that the most Defendant can say is it has not found any report of anyone falling on this stair, but people who fall without getting injured almost never report their falls, and even some who get injured don't report their falls. *Id.* Defendant replies that Plaintiff fails to cite to record evidence to dispute this fact. ECF No. [69] at ¶ 16.

- Plaintiff states that as she got closer to the exit, which was in the overcrowded back area, the people standing in the back were blocking her view of the railings that served as cues that there was a change in elevation — a step down — at that point. ECF No. [57] ¶ 23. Defendant disputes that the area was "overcrowded" and that the "railings served as cues there was a change in elevation." ECF No. [69] ¶ 23. Defendant points out that Plaintiff admitted if she had been looking at her feet, she would have seen the stair and that nobody was blocking Plaintiff's path to exit the Center Stage. *Id.*

Defendant argues it is entitled to summary judgment on both Counts because (1) Plaintiff fails to provide any record evidence that Carnival was on notice of a dangerous condition, whether

4

based on crowding or the stair's elevation, and (2) the stair was an open and obvious condition and Carnival had no duty to warn.[2] Plaintiff responds that the dangerous condition is the overcrowding in the concert hall and that Carnival employees had notice of the dangerous condition.

## II.   LEGAL STANDARD

The court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:"

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[2] Defendant initially argued, ECF No. [35] at 7, that Plaintiff has not disclosed any medical expert to sustain her burden that her non-observable injuries were caused by her fall. Defendant has withdrawn that argument, ECF No. [81].

5

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed R. Civ. P. 56(c). Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*, 695 F.2d at 1296.

### III. DISCUSSION

#### A. Notice of Unsafe Condition (Counts I and II)

Defendant argues that it is entitled to summary judgment as there is no evidence that it had actual or constructive notice of a risk-creating condition that caused Plaintiff's fall, specifically that a crowd of such volume was present such that the subject stair would become hidden from a passenger's view. ECF No. [35] at 5. Further, Defendant argues that there is no evidence to show that Defendant had actual or constructive knowledge that the subject stair/change in elevation posed a risk to its passengers. *Id.* at 6. Defendant points out that (a) Plaintiff's husband, who was walking immediately ahead of her, was able to descend the stair in the same conditions as Plaintiff, (b) Plaintiff admitted that she would probably have seen the stair if she had been looking at her feet, (c) and Plaintiff admitted that when as she was walking through the Center Stage, she did not bump into anyone, no one bumped into her, and no one was blocking Plaintiff's path to exit the Center Stage. *Id.* at 5. Plaintiff responds that Defendant "must be deemed to have had at least

constructive notice of anything as open and obvious as overcrowding." ECF No. [55] at 3. Plaintiff also argues that the presence of Defendant's employees in the hall when Plaintiff fell constitutes "at least" constructive notice on the part of Carnival of the overcrowding: Plaintiff points out that she testified that a Carnival employee named Olivia was present at the time and ran over and helped Plaintiff off the floor after the accident. *Id.* at 2-3. Defendant replies that nether Plaintiff's deposition testimony, nor her Declaration establishes notice. ECF No. [68] at 1.

Plaintiff asserts that Carnival's act of negligence as to both Counts is permitting a venue hall on its ship to become so overcrowded that the overcrowding caused her view of the change-in-elevation point to be obscured. ECF No. [55] at 1. The Court accordingly proceeds to analyze the issue of notice as it pertains to the alleged dangerous condition of overcrowding around the railing area, not as to a defect with the stair or the hall itself.

The elements of a negligence claim based on a shipowner's direct liability for its own negligence are well settled: "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014) (quoting *Chaparro*, 693 F.3d at 1336). "[A] shipowner's actual or constructive knowledge of the hazardous condition arises as part of the duty element in a claim seeking to hold the shipowner directly liable for its own negligence." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022).

> Actual notice exists when the defendant knows about the dangerous condition. See *Keefe*, 867 F.2d at 1322; *Guevara*, 920 F.3d at 720. Constructive notice exists where "the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures." *Keefe*, 867 F.2d at 1322. A plaintiff can establish constructive notice by alleging "that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (alteration in original) (quoting *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)).

7

> A plaintiff can also establish constructive notice by alleging "substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.' " *Id*. (quoting *Jones v. Otis Elevator Co*., 861 F.2d 655, 661–62 (11th Cir. 1988)).

*Id.* at 1095. Further, "in order to have a duty to warn of a danger, the cruiseline must have actual or constructive notice of the unsafe condition." *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (citation and internal quotation marks omitted).

As a preliminary matter, Defendant asserts that Plaintiff cannot cite to her deposition testimony and her Declaration to survive summary judgment, which are not evidence of Carnival's notice, nor can she rely on her own allegations at the summary judgment stage. Contrary to Defendant's contention, Plaintiff may rely on her own testimony to survive summary judgment. As the Eleventh Circuit has stated, its "case law recognizes that, even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012).

Plaintiff establishes a genuine dispute of material fact that Defendant had actual or constructive notice that the area immediately surrounding the railing of the stair was crowded when she fell. Plaintiff points to two places in the record to create a genuine issue of material fact as to notice. First, Plaintiff points to her deposition, where she testified as follows:

> Q. After you fell, what happens next?
> A. My husband heard me fall. I hit so hard that he heard it. And he turned around to see if I was okay. *And there was a Carnival employee there. I think her name was Olivia.* She came rushing over to me to see if I was okay. And there was a crowd. There was so many people. And I was so embarrassed. And I got up. And I started walking that way towards the elevators.

ECF No. [36-1] at 48 (emphasis added).

Second, Plaintiff points to her Declaration where she stated that "I saw several Carnival employees—certainly more than three—working there in the concert hall at the time, and those

8

employees were *standing in positions from which they couldn't help but see* that the hall was overcrowded." ECF No. [56-1] ¶3. A factfinder could find from Plaintiff's testimony that Defendant had actual or constructive knowledge that the area around the railing was crowded because its employees were present and had a view of the railing area when she fell.

Further, a factfinder could find that Defendant had notice that the area immediately surrounding the railing was *dangerously* crowded. Defendant cites *Malley* for the proposition that "[k]nowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous." *Malley v. Royal Caribbean Cruises Ltd*, 713 F. App'x 905, 908 (11th Cir. 2017). In *Malley*, the Eleventh Circuit found it was insufficient to create notice that "Defendant had notice of the coaming's height" on which plaintiff fell when "Defendant did not know that the coaming was dangerously high." *Id.* at 909. In contrast, there is a genuine dispute of material fact about whether Defendant had actual or constructive knowledge that the area immediately surrounding the railing was dangerously overcrowded. Plaintiff testified that "the place was packed[.]" ECF No. [36-1] at 36. Plaintiff stated that people "were standing along the railing, both sides of the railing, all along here. It was very crowded." ECF No. [36-1] at 39. Plaintiff also noted in her Declaration that Defendant had employees in the Center Stage area who had notice "that the hall was overcrowded[,]" ECF No. [56-1] ¶ 3.

In support of its Motion for Summary Judgment, Defendant argues that "[t]here is no evidence that Carnival had actual notice that a crowd of such volume was present that the subject stair would become hidden from a passenger's view." ECF No. [35] at 5. Defendant states there is evidence to the contrary and cites to the following three observations by Plaintiff: (1) Plaintiff's testimony that her husband did not fall when going down the stair fifteen feet before Plaintiff; (2) Plaintiff's admission that she would not have fallen if she looked to her feet when going down the

9

stair; and (3) Plaintiff's testimony that she did not bump into anyone in the Center Stage area and no one blocked her path. *Id.* Though these events bear on the question of whether the crowd size was dangerous, the Court cannot credit some of Plaintiff's statements over others. *See*, *e.g.*, *Carroll v. Carnival Corp.*, 955 F.3d 1260 (11th Cir. 2020). Plaintiff's testimony about Defendant's employees' presence in view of the railing area and the crowding around the railing is sufficient to raise a genuine dispute of material fact as to actual or constructive notice at the summary judgment stage. At this stage, the Court views the facts in the light most favorable to the non-moving party, and draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)). Here, a "factfinder could conclude that the crewmember knew or should have known" about the dangerous condition of crowding around the railings of the stair. *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018).

Accordingly, Plaintiff can establish a genuine dispute of material fact to survive summary judgment on the question of whether Defendant had notice that the crowding immediately surrounding the railway was a dangerous condition. Defendant is not entitled to summary judgment on the question of whether Defendant had actual notice of the alleged dangerous condition of overcrowding. Plaintiff has established a genuine dispute of material fact that Defendant had constructive or actual notice of the risk-creating condition. *See Keefe v. Bahama*

*Cruise Line*, *Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Plaintiff can survive summary judgment on the issue of Defendant's notice as to both counts.

### B. Open and Obvious Condition (Count II)

However, Defendant is entitled to summary judgment on Count II because the overcrowding was an open-and-obvious condition. Defendant argues that summary judgment is warranted on Count II because the stair was an open-and-obvious condition and so Defendant owed no legal duty to warn of it. ECF No. [35] at 9. In her Response, Plaintiff clarifies she has not alleged that anything was wrong with the design or setup of the hall or that the change in floor elevation in the hall constituted a dangerous condition. ECF No. [55] at 1. Instead, Plaintiff contends that Defendant's negligence was permitting a venue hall on its ship to become so overcrowded that the overcrowding caused injury to the Plaintiff. *Id.* at 2.

Though Plaintiff initially styled her failure to warn claim as "Negligent Failure to Warn of Floor's Change in Elevation," ECF No. [1] at 4, she now states that she is not alleging that the hall or stairs were the dangerous condition. ECF No. [55] at 2. Instead, she contends the dangerous condition was overcrowding. As above, the Court analyzes only the alleged dangerous condition of overcrowding. Accordingly, the Court considers whether the crowding in the hall constituted a dangerous condition of which Defendant had a duty to warn. "Under federal admiralty law, a cruise ship must warn of known dangers that are not open and obvious." *Keefe*, 867 F.2d at 1322. "If the cruise ship did not have notice of the danger or if the danger is open and obvious to a reasonable person, the ship has no duty to warn." *Malley*, 713 F. App'x at 907 (citations omitted). "To determine whether a condition is open and obvious, this Court asks whether a reasonable person would have observed the condition and appreciated the nature of the condition." *Id.* at 908 (citation omitted). "The Court focuses on what an objectively reasonable person would observe and does

11

not take into account the plaintiff's subjective perceptions." *Id.* at 908 (citing *Lugo v. Carnival Corp.*, 154 F.Supp.3d 1341, 1345–46 (S.D. Fla. 2015)).

The Court finds that Defendant had no duty to warn Plaintiff of the open and obvious condition of a crowded area of a room. As the court stated in *Lancaster*, "crowds and the dangers they present are open and obvious by nature. For instance, the obscuring of objects on the ground is an obvious consequence when too many people occupy a confined area. Defendant therefore had no duty to warn Plaintiff of the crowd or its dangers." *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1345 (S.D. Fla. 2015). In *Lancaster*, a 71 year old plaintiff with mobility problems had to navigate a crowded corridor. "Plaintiff tripped over what he believe[d] to be a piece of luggage and hit his head on the ship's deck." *Id.* at 1343. This Court found "both the luggage and the crowd are open and obvious conditions, thus Defendant owed no duty to warn Plaintiff of them." *Id.* at 1344. The Court made clear that "[a]s for the crowd, there […] was nothing hidden about it or the danger it presented. The crowd in the Corridor was so congested that Plaintiff could only make progress by weaving back and forth as he walked." *Id.* at 1345.

Here, Plaintiff's testimony establishes that the crowd around the railing was an open and obvious condition, which occurs when too many people occupy a confined area. During her deposition, Plaintiff explained that "it was back here [along the railing] that [people] were standing." ECF No. [36-1] at 147. Regarding the railing area, Plaintiff testified:

> People were standing. They were standing everywhere. And the railing that I was looking at, whether it was this one or that one, the one -- or the direction I was looking at where there should've been a railing for me to see, somebody was standing completely blocking it. And I didn't know there was a railing there until I was falling and got past that person and frantically grasping to try and break my fall.

ECF No. [36-1] at 152-53; *see also id.* at 42. There is no genuine dispute of material fact that a "reasonable person would have observed the condition and appreciated the nature of the

condition[,]" namely the crowding around the railing area. *Malley*, 713 F. App'x at 908. It was open and obvious to a reasonably prudent person that there were people around the Center Stage who may obscure objects.

Further, Plaintiff's inability to see the railing does not change the fact that the overcrowding was open and obvious. Plaintiff states she "didn't know there was a railing there until I was falling and got past that person and frantically grasping to try and break my fall[.]" ECF No. [36-1] at 152-53. However, plaintiff's "subjective observations are irrelevant in determining whether a duty to warn existed." *Lugo*, 154 F. Supp. at 1346. In *Lugo*, a subjective observation was that plaintiff fell off the bunk bed ladder because he "did not realize the ladder did not reach the floor until after his accident due to his inattention[,]" *Id.* at 1346. The Court held that "any danger posed by descending a bunk bed ladder that did not reach the floor of the cabin was open and obvious to Plaintiff." *Id*. Similarly, the fact that there were numerous people standing in the Center Stage area, which could conceal a stair, was "open and obvious to any reasonably prudent person through the exercise of common sense and the ordinary use of their eyesight" even if Plaintiff herself did not notice it. *Id.* "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses." *Lancaster*, 85 F. Supp. 3d at 1344. A reasonable person using their senses would have noticed the crowding. As to the crowding, there was nothing hidden, for purposes of a duty to warn analysis.

Viewing the facts in the light most favorable the Plaintiff, as this Court must, the record leaves no genuine dispute of material fact that the crowding and the fact it may conceal objects on the ground was an open and obvious condition of which Defendant had no duty to warn.

In *Carroll*, the plaintiff tripped over the leg of a lounge chair while she was walking through a narrow pathway on a Carnival cruise ship. *Carroll v. Carnival Corp.*, 955 F.3d 1260

13

(11th Cir. 2020). The district court granted summary judgment to the defendant, holding "placement of deck chairs on an open deck, on a clear and sunny day, was an open and obvious condition." *Id.* at 1264. "In reaching this decision, the district court relied on [the plaintiff's] deposition testimony that she could have seen the chair leg had she looked down…. The district court also relied on [the plaintiff's] testimony 'that she did not walk behind her husband because the area narrowed, as her husband explained, but rather, because "you do that."'" *Id.* at 1264-65. The Eleventh Circuit overturned the district court's grant of summary judgment to the defendant as "there was also evidence in the record—which the district court did not acknowledge—that [the plaintiff] was *forced* to walk behind her husband after passing the first lounge chair because the walkway narrowed." *Id.* The court found that "the district court erred by crediting some statements by [the plaintiff]—which favored Carnival's open and obvious argument—over her other statements that she was forced to follow behind her husband due the layout of the chairs and the narrowness of the walkway." *Id.* Accordingly, there was a genuine dispute of material fact preventing summary judgment in *Carroll* as to whether "the danger associated with the walkway was open and obvious" given the layout of the chairs and the narrowness of the walkway. *Id.* at 1265.

Unlike in *Carroll*, there is no genuine dispute of material fact that the overcrowding was open and obvious here. Plaintiff simultaneously testified that the many people around the railing were visible — so much so that they obscured the railing — and argues that the crowding — not the stair — was the dangerous condition. Plaintiff states "[t]he dangerous condition alleged in the Complaint is the overcrowding in the concert hall; [Plaintiff] hasn't alleged that anything was wrong with the design or setup of the hall." ECF No. [55] at 1. However, Plaintiff describes the Center Stage area as follows: "everybody was sitting in seats or at tables or something all through

14

the main Center Stage area. The crowd really was the problem in the back. They were all standing in the back." ECF No. [36-1] at 147. Plaintiff testified that "there's railings there. But you couldn't see them because people were leaning against them." *Id.* at 149. There is no record evidence that the crowding itself was not open and obvious. In fact, Plaintiff argues that the crowding was so open and obvious that "Carnival must be deemed to have had at least constructive notice of anything as open and obvious as overcrowding." ECF No. [55] at 3. "The open and obvious nature of a dangerous condition negates liability for failure to warn." *Id.* at 1267. The crowding by the railing area and the fact it could "obscur[e] … objects on the ground" was an open and obvious condition of which Defendant had no duty to warn. *Lancaster*, 85 F. at 1345.

As in *Lugo*, the Court finds that although "Plaintiff's injuries are unfortunate, liability cannot rest on sympathy alone." *Lugo*, 154 F. Supp. 3d at 1346 (citation omitted). Defendant is entitled to summary judgment on Count II of Plaintiff's Complaint for failure to warn.[3] Plaintiff is able to survive summary judgment on Count I of its Complaint for Negligence.

### C. Expert Testimony and Causation

Defendant initially argued that Plaintiff was without medical expert testimony to prove causation for her non-observable injuries. ECF No. [35] at 7. Following this and after two surgeries that failed to cure these injuries, Plaintiff was able to diagnose her condition and retain an expert. Plaintiff moved to disclose the expert late, ECF Nos. [71], [72], and the Court granted this late disclosure, ECF No. [75]. The Court allowed Plaintiff to file a Supplement to the Motion for

---

[3] That the crowding was open and obvious is fatal to Plaintiff's failure to warn claim. However, much like "the open and obvious nature of a dangerous condition does not bar a claim against a shipowner for negligent failure to maintain safe premises[,]" neither does it bar a claim for traditional negligence. *Carroll*, 955 F.3d at 1269. As in *Lancaster*, "[t]he Court's analysis does not end with the duty to warn inquiry, however, because Defendant still owed Plaintiff a general duty of reasonable care." *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1345 (S.D. Fla. 2015). Accordingly, the fact that the crowding was open and obvious is not fatal to Count I.

Summary Judgment, ECF No. [80], and Defendant to respond to this Supplement, ECF No. [81]. In its Supplement, Defendant indicated that pursuant to the expert disclosure, Defendant would withdraw its summary judgment argument that Plaintiff lacks expert testimony to support causation for Plaintiff's non-observable injuries. *Id*. Accordingly, the Court does not reach this argument.

### D. Plaintiff's Request for Summary Judgment

In her Response to Defendant's Motion for Summary Judgment, Plaintiff seeks partial summary judgment on the issue of overcrowding and notice. ECF No. [55] at 3. As discussed above, Plaintiff is able to establish there is a genuine dispute of material fact on overcrowding and notice to survive summary judgment on Count I. However, Defendant points to (1) Plaintiff's testimony that her husband did not fall when going down the stair fifteen feet before Plaintiff; (2) Plaintiff's admission that she would not have fallen if she looked to her feet when going down the stair; and (3) Plaintiff's testimony that she did not bump into anyone in the Center Stage area and no one blocked her path. This is enough to establish a genuine dispute of material fact on the issue of notice and overcrowding to prevent granting Plaintiff summary judgment on that issue.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, **ECF No. [35]**, is **GRANTED in part and DENIED in part**.

    a. The Motion is **DENIED** on Count I.

    b. The Motion is **GRANTED** on Count II.

Case No. 23-cv-22938-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 25, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:	Counsel of Record